STATE OF NORTH CAROLINA v. McCLARY HALL, JR., RONALD SHOATS, AND TIMOTHY TYRONE SESSOMS

No. 906SC1338

(Filed 5 November 1991)

**1. Jury § 7.14 (NCI3d) — trafficking in cocaine — jury selection — peremptory challenges — racial discrimination**

The convictions of defendant Sessoms for trafficking in cocaine were remanded for a determination of whether the

STATE v. HALL

[104 N.C. App. 375 (1991)]

prosecutor's explanation for his peremptory challenge of a juror was race-neutral where defendant Sessoms and the juror are black; the prosecutor asked the clerk, after the juror was seated, "if there was a white male out there"; the prosecutor briefly questioned the black juror and then peremptorily challenged her; a white male was called and later became the jury foreperson; and the prosecutor offered an explanatory statement. Although the State contended that the prosecutor adequately explained the meaning of his question and that such a statement may refute an inference of discrimination, the statement in this case came during the trial court's hearing on a *Batson* motion and not during the voir dire examination. The trial court should have considered the statement for whether the prosecutor adequately rebutted the prima facie showing, not for whether defendant made a prima facie showing.

**Am Jur 2d, Jury § 235.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

2. **Jury § 7.9 (NCI3d)— trafficking in cocaine—jury selection— challenge for cause denied—no error**

The trial court did not err in a prosecution for cocaine trafficking by denying defendants' challenges for cause of a prospective juror who stated during jury selection that he would hold it against the defendants if his chickens died during the trial and that he held a preconceived opinion as to the defendants' guilt, and who approached defense counsel after jury selection and stated that he did not want to be on the jury and that he would hold them responsible for the deaths of his chickens. The record reveals that the juror stated that he could presume the defendants to be innocent until proven guilty beyond a reasonable doubt despite his preconceived opinions and that he would decide the case based on the evidence and the law as instructed by the trial court.

**Am Jur 2d, Jury §§ 265, 267, 269.**

3. **Jury § 6 (NCI3d)— cocaine trafficking—jury selection—remarks of court to defense counsel—no prejudice**

There was no prejudice in a cocaine trafficking prosecution where the court told defense counsel in a bench conference during jury selection "that I thought that the three of you

asked asinine questions and that you repeated them until I felt the jurors were sick of them." After jury selection had been completed, the trial court asked the jury whether any of them had overheard any statement made by the trial court to defense counsel during bench conferences, and no juror indicated that he or she had heard any such statement.

**Am Jur 2d, Trial §§ 303, 304.**

**Remarks or acts of trial judge criticizing, rebuking, or punishing defense counsel in criminal case, as requiring new trial or reversal. 62 ALR2d 166.**

4. **Conspiracy § 21 (NCI4th) — cocaine trafficking — mutually exclusive conspiracies — judgment vacated on offense with lesser punishment — error**

    Convictions for conspiracy to traffic in cocaine were vacated where the court submitted mutually exclusive conspiracies to the jury without the required instruction that it could convict defendant of only one of the conspiracies, the jury returned guilty verdicts on both, and the court arrested judgment for the offense providing the lesser punishment. The court should have vacated the judgment for the offense providing the more serious punishment, and the case was remanded with instructions for the court to enter judgments and sentences accordingly.

**Am Jur 2d, Conspiracy §§ 27, 33.**

Judge EAGLES concurs in the result only.

APPEAL by defendants from judgments entered 12 July 1990 in HERTFORD County Superior Court by *Judge Orlando Hudson.* Heard in the Court of Appeals 25 September 1991.

*Lacy H. Thornburg, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, for the State.*

*Cheshire, Parker, Hughes & Manning, by Joseph Blount Cheshire, V and Richard Noel Gusler, for defendant-appellant McClary Hall, Jr.*

*Kevin M. Leahy for defendant-appellant Ronald Shoats.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Teresa A. McHugh, Assistant Appellate Defender, for defendant-appellant Timothy Tyrone Sessoms.*

GREENE, Judge.

McClary Hall, Jr. (Hall) appeals from two judgments entered 12 July 1990, which judgments were based upon jury verdicts convicting Hall of two violations of N.C.G.S. § 90-95(h) (1990), conspiracy to traffick in cocaine from 10 April 1989 through 15 April 1989 and conspiracy to traffick in cocaine from 23 April 1989 through 31 May 1989. Ronald Shoats (Shoats) appeals from two judgments entered on 12 July 1990, which judgments were based upon jury verdicts convicting Shoats of two violations of N.C.G.S. § 90-95(h), conspiracy to traffick in cocaine from 10 April 1989 through 15 April 1989 and conspiracy to traffick in cocaine from 23 April 1989 through 31 May 1989. Timothy Tyrone Sessoms (Sessoms) appeals from a judgment entered 12 July 1990, which judgment was based upon a jury verdict convicting Sessoms of one violation of N.C.G.S. § 90-95(h), conspiracy to traffick in cocaine from 10 April 1989 through 15 April 1989.

Hall and Shoats were charged with and tried on three counts of conspiracy to traffick in cocaine. The first alleged conspiracy covered the period of 10 April 1989 through 15 April 1989, the second covered the period of 23 April 1989 through 31 May 1989, and the third covered the period of 10 April 1989 through 31 May 1989. Sessoms was charged with and tried on two counts of conspiracy to traffick in cocaine, the first alleged conspiracy covering the period of 10 April 1989 through 15 April 1989, and the second alleged conspiracy covering the period of 10 April 1989 through 31 May 1989.

Towards the end of the jury selection, the clerk called Beverly Askew (Askew), a black woman, to be seated in the jury box for examination. After Askew was seated, the prosecutor asked a question of the clerk, and then the trial court sent the jurors out of the courtroom to hear motions. Defendants made a *Batson v. Kentucky* motion, citing as support the question asked of the clerk by the prosecutor whether "there was a white male out there" in the jury panel? Defendants argued that the prosecutor's question demonstrated "his purpose and intent to try to place individuals of the Caucasian persuasion on the jury." After stipulating to the content of his question, the prosecutor explained:

> And as far as—my impression—my impression when I came up there, it was my impression there was a black juror

and a white — and a white juror left in the jury panel and there was not a black female or a female at all left.

I was trying to determine who — who was left. I had three left and two were — two were men and one was a woman, and I had — and apparently there were two women and one men — one man. And I had it backwards, and that's what I was trying to determine who was left as best I could.

After the trial court denied the defendants' *Batson* motion, the defendants made a motion for a mistrial on the ground that the trial court had counsel for the defendants "up to the bench at least on three occasions talking about the voir dire asking us to hurry up. The last such time was yesterday afternoon." Defendants argued that the jury panel probably heard the trial court's comments because Hall, who had been sitting about two feet from the jury box, had overheard them. The trial judge responded; "I make no bones about I told you all that I thought that the three of you asked asinine questions and that you repeated them until I felt the jurors were sick of them and that I informed you of that, not necessarily in those — in those terms." After jury selection had been completed, the trial judge asked, "Has any juror, including the alternates, heard any statement by the Court to any of the lawyers involved in this case at the bench conference? That means that when these lawyers approached the bench and we were having a conversation, did any juror hear the substance of anything that was said? If so, you just please raise your hand?" There being no response from any juror, the trial court found that the jurors had not heard anything that was said to counsel at the bench and denied the defendants' motion for a mistrial.

After the trial court denied the defendants' motion for a mistrial, the prosecutor asked Askew a few questions and then excused her using his last peremptory challenge. Defendants made another *Batson* motion, and the trial court brought Askew back into the courtroom to determine her race. Askew testified that she was black. The State concedes that the defendants are black. Defendants argued that they had made out a prima facie case of discrimination. The trial court, however, disagreed and determined "that none of the defendants have made out a prima facie case that the District Attorney in this case as to . . . [Askew, a black woman] has used his peremptory challenge in a racially discriminatory

fashion." The trial court then excused Askew, and the clerk called another juror, Cliff Phelps (Phelps).

During the voir dire examination of Phelps, the prosecutor asked Phelps whether, if selected for the jury, he would make his decisions based upon the testimony and the law as the trial judge explained it, and Phelps said that he would. Phelps also said that he understood the defendants to be presumed innocent and that he would give the defendants a fair and impartial trial. During the defendants' examination of Phelps, however, Phelps, a chicken farmer, stated that he would hold it against the defendants if his chickens were to die during the trial and stated that he "kind of" considered the defendants to be guilty. The defendants challenged Phelps for cause, and the trial court denied their motions.

After jury selection concluded, counsel for Shoats and Sessoms went out for lunch. Seated at a table across from counsel were various public officials, including Ms. Johnson, the Hertford County Clerk of Superior Court. Phelps was also at the restaurant. During their meal, Phelps approached the defense counsel. According to Ms. Johnson,

> [w]e were just sitting at the table, and Mr. Phelps, he was coming from around from the corner. The restaurant has different sections. And he approached the table, he said something to the effect, I told y'all I didn't really want to serve as a juror and that if something happened to the chickens—no, he did say something about the shifts, something about who was going to take the shift. He said, because if something happens to my chickens, I'm going to hold y'all responsible for them.

Ms. Johnson did not have an opinion as to whether Phelps appeared to be joking or serious when he spoke to counsel. The trial judge then asked Phelps whether he had said "that if something happened to your chickens you would hold them responsible?" Phelps said that he may have said it, but that he said it "in a joking type manner." Furthermore, when asked by the trial judge whether he could still be a fair and impartial juror, Phelps indicated that he could. The defendants again challenged Phelps for cause. The trial court denied the challenge finding that Phelps made the statement concerning his chickens, that he made it in a joking manner, that Phelps violated the trial court's order by talking with the

attorneys, and that despite his comments, Phelps "can be a fair and impartial juror . . . ."

The State's evidence tends to show the following: On or about 10 April 1989, Hall, Shoats, and Sessoms entered into an agreement to purchase a large amount of cocaine in Florida and to have another person procure and deliver it to them. The person was to travel to Florida by airplane, and return from Florida by train. On or about 13 April 1989, the defendants and another person went to Florida to purchase the cocaine. On or about 15 April 1989, the defendants and the other person returned from Florida without the cocaine because Hall had not brought enough money with him to pay for it. On or about 23 April 1989, Hall and Shoats entered into an agreement to return to Florida to purchase a large amount of cocaine. On or about 25 April 1989, Hall, Shoats, and another person traveled by airplane to Florida, and Hall and Shoats purchased nine two-pound packages containing cocaine. Later that day, the person solicited to return by train with the cocaine was arrested at the train station with the cocaine.

The defendants presented no evidence at trial. The jury returned guilty verdicts against the three defendants on each of the alleged conspiracies. The trial court arrested judgment, however, for the charges of conspiracy to traffick in cocaine from 10 April 1989 through 31 May 1989 with regard to all the defendants. The trial court imposed on both Hall and Shoats two consecutive, forty-year sentences for their two conspiracy convictions. The trial court imposed on Sessoms one forty-year sentence for his one conspiracy conviction.

---

The issues are (I) whether a defendant established a prima facie showing of purposeful discrimination in the selection of a jury where the prosecutor asks the clerk whether there was a white man in the venire and then peremptorily challenges a black prospective juror; (II) whether the trial court erred in denying challenges for cause of a prospective juror who had made comments to defense counsel about his potential jury service and who had held a preconceived opinion about the defendants' guilt; (III) whether the trial court's comments to defense counsel during a bench conference prejudiced the defendants where the record shows that the jury did not hear the comments; and (IV) whether the defendants may be punished for two separate conspiracies where the

defendants are convicted of one continuing conspiracy and the two separate conspiracies thereby producing separate convictions for mutually exclusive offenses.

I

[1]   Sessoms argues that the trial court erred in concluding that he failed to make out a prima facie case of discrimination under the equal protection clause of the Fourteenth Amendment to the United States Constitution in the jury selection. Article I, section 26 of the Constitution of North Carolina and the equal protection clause of the Fourteenth Amendment to the United States Constitution prohibit the State from "peremptorily challenging prospective jurors solely on the basis of race." *State v. Smith*, 328 N.C. 99, 119, 400 S.E.2d 712, 723 (1991). In *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed.2d 69 (1986), the United States Supreme Court "outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause." *Hernandez v. New York*, 500 U.S. ---, ---, 114 L.Ed.2d 395, 405 (1991).

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. . . . Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. . . . Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Id.* (citations omitted).

The three-part test for determining whether a defendant has made the initial prima facie showing of purposeful discrimination is stated as follows:

> [T]he defendant first must show that he is a member of a cognizable racial group, . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the

prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson*, 476 U.S. at 96, 90 L.Ed.2d at 87-88 (citations omitted). The State concedes that Sessoms is black, the voir dire of Askew established that she is black, and the prosecutor peremptorily challenged Askew. Therefore, the issue to be decided is whether the prosecutor's peremptory challenge of Askew raises an inference of purposeful discrimination in light of the relevant circumstances surrounding the challenge. *Smith*, 328 N.C. at 120, 400 S.E.2d at 724.. If Sessoms raised such an inference, then he established a prima facie case of purposeful discrimination.

Sessoms argues that a "relevant circumstance" which supports an inference of purposeful discrimination is the prosecutor's question of the clerk. "[Q]uestions and statements made by the prosecutor *during voir dire examination* and in exercising his peremptories which may either lend support to or refute an inference of discrimination" are "other relevant circumstances" under *Batson.* *State v. Robbins*, 319 N.C. 465, 489, 356 S.E.2d 279, 293, *cert. denied*, 484 U.S. 918, 98 L.Ed.2d 226 (1987) (emphases added); *Smith*, 328 N.C. at 121, 400 S.E.2d at 724. After Askew was seated for examination, the prosecutor "asked the Clerk if there was a white male out there?" The prosecutor briefly questioned Askew and then peremptorily challenged her. Askew was excused and Phelps, apparently a white man, was called for examination and later became the jury foreperson. Standing alone, the prosecutor's peremptory challenge of Askew would not amount to a prima facie showing of purposeful discrimination. *Robbins*, 319 N.C. at 494-95, 356 S.E.2d at 296-97 (more required for prima facie case than merely showing defendant of cognizable racial group, members of defendant's race challenged, and no members of defendant's race served on jury). The prosecutor's question of the clerk prior to his examination of Askew, however, is a relevant circumstance which, when combined with the prosecutor's subsequent peremptory challenge of Askew, a black woman, raises an *inference* of purposeful discrimination on the prosecutor's part thereby establishing a prima facie showing.

The State argues, however, that the prosecutor adequately explained to the trial court the meaning of his question of the clerk, and because such a statement may refute an inference of discrimination, Sessoms failed to establish a prima facie showing

of purposeful discrimination. We disagree. Although a prosecutor's statements made *during* voir dire examination may refute an inference of discrimination, the prosecutor's explanatory statement in this case did not come during the voir dire examination; instead, it came during the trial court's hearing on the *Batson* motion. The prosecutor's statement may have adequately explained the meaning of his question, but the trial court should have considered the statement, not for whether the defendant made a prima facie showing, but for whether the prosecutor adequately rebutted the prima facie showing. The prosecutor's statement was in reality his race-neutral explanation for his alleged discrimination and should have been considered as such. To hold otherwise would essentially eliminate the second step of the *Batson* three-step process for evaluating claims of equal protection violations and also eliminate the defendant's opportunity to demonstrate that the prosecutor's explanation was a mere pretext.

The trial court's error in concluding that the defendant had failed to make out a prima facie case of discrimination, however, does not require a new trial. *See State v. Green*, 324 N.C. 238, 241, 376 S.E.2d 727, 728 (1989) (where trial court erred in conducting *Batson* hearing, case remanded for new *Batson* hearing); *cf. State v. Booker*, 306 N.C. 302, 313, 293 S.E.2d 78, 84 (1982) (where prejudicial error occurs on issue not fully resolved by trial court, appellate court may remand to trial court for appropriate proceedings to determine issue without new trial). Because we find no other error in Sessoms' trial, this case is remanded to the Superior Court of Hertford County where a judge presiding over a criminal session will determine whether the prosecutor's explanation for his peremptory challenge of Askew was race-neutral. If the trial court finds that the prosecutor's explanation was not race-neutral, Sessoms is entitled to a new trial. If the trial court finds that the prosecutor's explanation for his peremptory challenge was race-neutral, Sessoms shall be given an opportunity to demonstrate that the explanation was a mere pretext. If Sessoms meets his ultimate burden of proving purposeful discrimination, he is entitled to a new trial. If not, the trial court will order commitment to issue in accordance with the judgment appealed from and entered on 12 July 1990.

II

[2] All of the defendants argue they are entitled to a new trial because the trial court erred in denying their challenges for cause

of prospective juror Phelps. During jury selection, Phelps stated that he would hold it against the defendants if his chickens were to die during the trial and that he held a preconceived opinion as to the defendants' guilt. Furthermore, after jury selection had concluded, Phelps approached defense counsel and told them that he did not want to be on the jury and that he would hold them responsible for the deaths of his chickens.

"Challenges for cause in jury selection are matters in the discretion of the court and are not reviewable on appeal except for abuse of discretion." *State v. Kennedy*, 320 N.C. 20, 28, 357 S.E.2d 359, 364 (1987). Furthermore, according to our Supreme Court,

> [t]he trial court is not required to remove from the panel every potential juror who has any preconceived opinions as to the potential guilt or innocence of a defendant. . . . If the prospective juror, in the trial court's opinion, credibly maintains that he will be able to 'lay aside his impression or opinion and render a verdict based on the evidence presented in court,' . . . then it is not error for the court to deny defendant's motion to remove said juror for cause.

*State v. Cummings*, 326 N.C. 298, 308, 389 S.E.2d 66, 71 (1990) (citations omitted). In this case, the trial court concluded that Phelps could be a fair and impartial juror. The record reveals that Phelps stated that he could presume the defendants to be innocent until proven guilty beyond a reasonable doubt despite his preconceived opinions and that he would decide the case based on the evidence and the law as instructed by the trial court. Accordingly, the trial court did not abuse its discretion in refusing to excuse Phelps for cause.

### III

[3] Hall and Sessoms argue that the trial court made prejudicial comments to defense counsel in front of the jury during jury selection thereby entitling them to a new trial. We disagree.

Regardless of whether the trial court erred by telling defense counsel during a bench conference "that I thought that the three of you asked asinine questions and that you repeated them until I felt the jurors were sick of them," Hall and Sessoms have not met their burden of showing how the trial court's comments prejudiced them. *State v. King*, 311 N.C. 603, 618, 320 S.E.2d 1, 11 (1984) (trial court's remarks not grounds for new trial if remarks

could not have prejudiced defendant); *State v. Summerlin*, 98 N.C. App. 167, 174, 390 S.E.2d 358, 361, *disc. rev. denied*, 327 N.C. 143, 394 S.E.2d 183 (1990) (defendant bears burden of showing prejudice). After jury selection had been completed, the trial court asked the jury whether any of them had overheard any statement made by the trial court to defense counsel during bench conferences, and no juror indicated that he or she had heard any such statement. Accordingly, because the jury did not hear the trial court's statement to defense counsel, Hall and Sessoms could not have been prejudiced by it.

## IV

[4] Hall and Shoats argue that the trial court erred in submitting to the jury three separate conspiracy charges covering the period of 10 April 1989 through 31 May 1989 (Conspiracy I), and the periods of 10 April 1989 through 15 April 1989 and 23 April 1989 through 31 May 1989 (Conspiracies II), and in arresting judgment in Conspiracy I.

Where several offenses charged allegedly arise from the same transaction, and the offenses are mutually exclusive, a defendant may not be convicted of more than one of the mutually exclusive offenses. *State v. Speckman*, 326 N.C. 576, 578, 391 S.E.2d 165, 167 (1990). In this case, a determination that the defendants entered into one agreement to commit a series of unlawful acts over a period of time is inconsistent with a determination that multiple agreements to commit the same series of acts over the same period of time were made. On the facts presented here, either one agreement was made or two agreements were made. Both views cannot exist at the same time. Therefore, the offenses of Conspiracies I and II are mutually exclusive offenses. Accordingly, the defendants cannot be convicted of both Conspiracy I and Conspiracies II. At trial, the prosecutor was apparently aware of this. He stated to the trial court,

> [i]f they are convicted of all three, it would be my position, now — and it will be my position if they are convicted of all three that they can be sentenced as — I would have no objection and would not ask for the Court but to sentence them on one and to arrest the judgment in the other two.

Although a defendant may not be convicted of mutually exclusive offenses arising from the same transaction, the State may

charge a defendant with both such offenses. *Id.* Such "offenses may be joined for trial when they are alleged to arise from the same act or transaction." *Id.* Furthermore, where, as here, there is substantial evidence tending to support Conspiracies I and II, the State is not required to elect between the mutually exclusive offenses. *Id.* at 579, 391 S.E.2d at 167.

> Indeed, if the evidence at trial conflicts, and some of it tends to show . . . [Conspiracy I] but other evidence tends to show that the same transaction amounted to . . . [Conspiracies II], the trial court should submit both charges for the jury's consideration. In doing so, however, the trial court must instruct the jury that it may convict the defendant only of one of the offenses or the other, but not of both.

*Id.* Here, the trial court did not give the required instruction, and the jury convicted the defendants of the mutually exclusive offenses.

Where the trial court fails to instruct the jury that it may convict the defendant of only one of the mutually exclusive offenses, the jury returns guilty verdicts on the mutually exclusive offenses, and the trial court consolidates the offenses for a single judgment, the defendant is entitled to a new trial. *Id.* at 580, 391 S.E.2d at 167-68. A defendant is not prejudiced, however, where the trial court fails to give the required instruction, the jury returns guilty verdicts on the mutually exclusive offenses, and the trial court vacates the judgment for the mutually exclusive offense providing the more serious punishment. *Cf. United States v. Daigle*, 149 F. Supp. 409, 414-15 (D.D.C.), *aff'd per curiam*, 248 F.2d 608 (D.C. Cir. 1957), *cert. denied*, 355 U.S. 913, 2 L.Ed.2d 274 (1958) (where jury convicts defendant of mutually exclusive offenses, no prejudicial error if trial court vacates guilty verdict for mutually exclusive offense providing greater punishment). In this case, the mutually exclusive offenses providing the more serious punishment are Conspiracies II, and the trial court should have vacated the judgment for them. To the contrary, the trial court arrested judgment for Conspiracy I and entered judgments and two consecutive sentences for Conspiracies II. Accordingly, we vacate Hall's and Shoats' convictions for the 10 April 1989 through 15 April 1989 and the 23 April 1989 through 31 May 1989 conspiracies and remand with instructions to the trial court to enter judgments and sentences for the 10 April 1989 through 31 May 1989 conspiracy.

In summary,

Case No. 90-CRS-407 (Sessoms)—Remanded for *Batson* hearing; otherwise, no error.

Case Nos. 90-CRS-73 (Hall), 90-CRS-76 (Hall), 90-CRS-403 (Shoats), and 90-CRS-404 (Shoats)—Judgments vacated.

Case Nos. 90-CRS-1860 (Shoats) and 90-CRS-1864 (Hall)—Remanded for entry of judgments and sentences; otherwise, no error.

Chief Judge HEDRICK concurs.

Judge EAGLES concurs in the result only.