STATE OF NORTH CAROLINA v. ARTHUR HAMES

No. COA04-968

(Filed 17 May 2005)

**1. Evidence— statements at scene of shooting—admissibility limited—no prejudice**

In light of the evidence introduced by defendant during his case-in-chief about his statements at the scene of a shooting tending to show that he acted in self-defense, there was no prejudice from the limitation of defendant's questioning of law enforcement officers about those statements during the State's case-in-chief.

**2. Evidence— witness's statement at scene—not trustworthy—not excited utterance**

There was no abuse of discretion in excluding a witness's statement, claimed to be an excited utterance, where an officer

testified that the witness had appeared intoxicated and that she had changed her story while talking to him. The rationale for the excited utterance exception is trustworthiness; moreover, the testimony would only have corroborated other evidence.

### 3. Criminal Law— inconsistent verdicts—manslaughter and assault—intent to kill

A new trial was awarded where the offenses of which defendant was found guilty were mutually exclusive and the jury's verdicts were logically inconsistent. Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury and attempted murder of the same victim, and found guilty of assault with a deadly weapon inflicting serious injury and voluntary manslaughter. The jury necessarily found intent to kill for the manslaughter but not for the assault.

Appeal by defendant from judgment entered 4 December 2003 by Judge Marcus L. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 March 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Fred Lamar, for the State.*

*Miles & Montgomery, by Lisa Miles, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Arthur Hames ("defendant") appeals his convictions for voluntary manslaughter of his brother, assault with a deadly weapon inflicting serious injury upon Stephanie Marzette ("Marzette"), and attempted voluntary manslaughter of Marzette. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error with respect to the voluntary manslaughter conviction. However, because we conclude that the offenses of assault with a deadly weapon inflicting serious injury and attempted voluntary manslaughter are mutually exclusive, we hold that defendant is entitled to a new trial with respect to the shooting of Marzette.

The facts and procedural history pertinent to the instant appeal are as follows: On 21 April 2002, Charles Kenneth Hames ("Hames") and Marzette were driving through Charlotte in search of a store where they could buy sewing thread. Hames and Marzette decided to drive to a residence shared by Hames and defendant, his younger brother. Shortly after they arrived at the residence, an argument

ensued between Hames and defendant. While Hames and Marzette were in Hames' bedroom, defendant entered the room and shot Hames with a handgun. Defendant subsequently approached Marzette and shot her as well.

After law enforcement officers arrived at the residence, defendant accompanied two officers inside the residence. Defendant told the officers where the handgun was located, and the officers secured it. The officers thereafter searched the residence and found Hames laying on the floor of his bedroom and Marzette laying in the closet of the bedroom.

Defendant was arrested and medical personnel transported Hames and Marzette to Carolinas Medical Center. Hames subsequently died from his gunshot wounds. Although she survived the shooting, Marzette was hospitalized for several days.

On 13 May 2002, defendant was indicted for first-degree murder of Hames and assault with a deadly weapon with intent to kill inflicting serious injury upon Marzette. On 17 March 2003, defendant was also indicted for attempted murder of Marzette. At trial, defendant testified that he shot Hames and Marzette by accident and in self-defense. The jury found defendant guilty of voluntary manslaughter of Hames, guilty of assault with a deadly weapon inflicting serious injury upon Marzette, and guilty of attempted voluntary manslaughter of Marzette. The trial court thereafter sentenced defendant to a total of 163 to 215 months incarceration. Defendant appeals.

---

We note initially that defendant's brief contains arguments supporting only three of the original thirteen assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2005), the ten omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendant for appeal.

The issues on appeal are whether the trial court erred by: (I) excluding statements made by defendant to law enforcement officers following the shootings; (II) excluding statements made by Izella Miller ("Miller") to law enforcement officers following the shootings; and (III) entering judgment against defendant for attempted voluntary manslaughter.

[1] Defendant first argues that the trial court erred by excluding statements he made to law enforcement officers following the shoot-

ings. Defendant asserts that his statements should have been admitted as excited utterances, and that he was prejudiced by their exclusion. We disagree.

For a statement to qualify as an excited utterance, the statement must be in response to "a sufficiently startling experience suspending reflective thought and . . . a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985). However, "statements or comments made in response to questions do not necessarily rob the statements of spontaneity." *State v. Boczkowski*, 130 N.C. App. 702, 710, 504 S.E.2d 796, 801 (1998). Instead, "[t]he critical determination is whether the statement was made under conditions which demonstrate that the declarant lacked the 'opportunity to fabricate or contrive' the statement." *State v. Wright*, 151 N.C. App. 493, 497, 566 S.E.2d 151, 154 (2002) (quoting 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 164 (3d ed. 1988)).

In the instant case, Charlotte-Mecklenburg Police Department Officer Scott A. Sharp ("Officer Sharp") filed a report following his investigation of the shootings. The report contains the following pertinent narration:

> As Officer Buchanan assessed the victim[s], I looked back to the front of the home and asked the black male, identified as Arthur Lee Hames, who shot the victim[s]. He immediately responded "I f[*****]g shot the m[****]r f[*****]s!" I ordered Mr. Hames to turn around and place his hands behind his back, which he did, and secured him with handcuffs. While I was securing the suspect he said the male victim, identified as his brother Charles Hames, approached him with a gun and that he shot him in self defense.

Charlotte-Mecklenburg Police Department Officer W.L. Guild ("Officer Guild") interviewed defendant the night of the shootings. Officer Guild's report of the interview contains the following pertinent narration:

> 4:05 a.m. I entered the interview room with Arthur Hames [who] was seated at the back of the room . . . . I advised him that his brother was dead. He became extremely upset. . . . He stated "Lord Jesus. I didn't want to get rid of my brother. He jumped on me and pushed me. He came off on me like he always do."

Prior to trial, the trial court allowed the State's motion *in limine* regarding these statements. The trial court ruled that because defend-

ant was a party in the trial, his statements to the law enforcement officers were self-serving declarations that could be introduced by defendant for corroborative or impeachment purposes during his own case, but not for substantive purposes during the State's case. The trial court concluded that "what is before me now would not qualify as an excited utterance[,]" and the trial court agreed that those officers testifying for the State should be held under subpoena in order to provide corroborative information during defendant's case. Defendant contends that the trial court's determination limited his ability to present self-defense evidence.

We note that "[i]f a statement fits an exception, then it is admissible even if self-serving, unless the particular exception prohibits it." *State v. Harper*, 51 N.C. App. 493, 497, 277 S.E.2d 72, 75 (1981); *see State v. Moore*, 41 N.C. App. 148, 151, 254 S.E.2d 252, 254 (1979) ("If testimony is otherwise admissible, it is not to be excluded merely because it is 'self-serving.' "). However, while it is true that the trial court may admit corroborative evidence prior to the testimony of a witness, *State v. Hinson*, 310 N.C. 245, 256, 311 S.E.2d 256, 263, *cert. denied*, 469 U.S. 839, 83 L. Ed. 2d 78 (1984), "[t]here is no right to corroboration in advance of the testimony of a witness." *State v. Ball*, 344 N.C. 290, 307, 474 S.E.2d 345, 355 (1996).

In the instant case, the statements defendant gave to Officers Sharp and Guild would only have corroborated the testimony given by defendant during his case-in-chief. Defendant repeatedly testified at trial that Hames was verbally abusive to him the night of the shootings, stating that Hames "went off on" him when a male named Roosevelt arrived at the residence. Defendant testified that Hames "got in my face and started cussing, cursing me, calling me all kind of this and that." Defendant stated that he was "afraid to sit down with him standing on top of me[,]" and that "[t]he way he would talk and the rage he was in, I—I thought he was getting ready to kill me." Defendant further testified that

Then he got to—he got to running off the mouth about I didn't have no—no business there, it was his house too, and all this punk, sissy sucker, and all this mother, you know, he was saying anything else in the book, and spitting in my face and he pulled something out and stuck it to my head.

Defendant testified that the object "looked" and "feeled" like a handgun, and that he thought it was a handgun. Defendant testified that Hames then "said man, I'll blow your m****r-f*****g brains out if you

say one d**n word. He said,—then he showed me it again and said do you think I'm lying? Say something and I'll blow your—I'll blow your d**n brains out."

Defendant further testified that as he attempted to retrieve his own weapon, Hames continued to call him names and yell at him out the window of the residence. Defendant testified that when he returned to the residence and entered Hames' bedroom, Hames pointed an object "right between" his eyes. Defendant testified that he knew the barrel of a gun when he saw a barrel pointed at his eyes.

After testifying that the gun "kicked back up" and "double shot [Hames] twice[,]" defendant asserted that he and Marzette attempted to call 9-1-1, but were unsuccessful. Defendant testified that he then returned to Hames' bedroom, where Marzette "said Lee, you m****r f****r, and she reached down on the floor to pick up something off the floor." Defendant further testified that he "was still thinking it was a gun in that room" and that Marzette was going to shoot him. Defendant stated that "I thought my life was—my life was in danger, then I fired the gun right behind her legs." Defendant also stated that he was "distraught" after the shootings, and that he "never had any intent of hurting" Hames or Marzette. Defendant testified that he was "frightened" by Hames' threats, and that he felt it was necessary to protect himself from Hames. Although defendant did not call Officer Guild to testify, Officer Sharp testified during defendant's case-in-chief and stated that defendant was agitated and upset following the shootings. Officer Sharp testified that while he was handcuffing defendant, defendant told him that Hames had approached him with a gun and defendant had shot Hames in self-defense.

"Not every erroneous ruling on the admissibility of evidence will result in a new trial." *State v. Knox*, 78 N.C. App. 493, 496, 337 S.E.2d 154, 157 (1985). Instead, "[t]he burden is on [the] appellant to show both error and a reasonable possibility 'that had the error in question not been committed, a different result would have been reached at the trial.' " *Id.* (quoting N.C. Gen. Stat. § 15A-1443). In the instant case, assuming *arguendo* that the trial court erred by limiting defendant's questioning of law enforcement officers during the State's case-in-chief, in light of the evidence introduced by defendant during his case-in-chief, we conclude that the alleged error by the trial court was not prejudicial. As detailed above, defendant testified on his own behalf regarding his statements and intentions during the shootings, and Officer Sharp corroborated portions of defendant's testimony.

Defendant has failed to demonstrate that a different result would have been reached had the trial court allowed him to question the law enforcement officers further during the State's case-in-chief. Accordingly, defendant's first argument is overruled.

[2] Defendant next argues that the trial court erred by excluding Miller's statements to law enforcement officers following the shootings. Defendant asserts that Miller's statements to Officer Sharp were admissible as excited utterances, and that he was prejudiced by their exclusion. We disagree.

Officer Sharp's report of the shootings contains the following pertinent narration:

> I spoke to the witness Izella Miller, and asked her what happened. She told me the male victim and the suspect had been arguing and the male victim approached the suspect with what appeared to be a silver handgun and pointed it at him. The suspect then went outside to his car and returned with a gun and shot the male victim. The female victim, who had not been shot yet, told her to call 911. She said that when she tried from her home, her phone wasn't working and she went to her next door neighbor[']s house . . . and called 911. She said when she came back to the home, she found out the suspect had shot the female victim while she was gone, and she called 911 again from her home. She also said the suspect went outside to the back of the house and fired at least one shot . . . . I asked Ms. Miller to clarify her story about the suspect going outside, and she recanted her story and said he had gone to the padlocked closet in the bedroom and gotten the gun from in there. When asked why she had two different stories, she did not answer.

During direct examination by the State, Officer Sharp testified that he spoke to Miller at the scene, but that she was "upset" and "appeared to be intoxicated." During cross-examination, defendant attempted to elicit from Officer Sharp Miller's statements regarding the shootings. The trial court sustained the State's objection to the presentation of such evidence, noting that "[t]here's nothing about . . . these circumstances that indicate an excited utterance. She was answering his query. And there's nothing about this that appears to meet any of the qualifications of something stated in spur of the moment . . . . He's asking her what happened and then [she] changed her story."

Defendant contends that the trial court erred in finding that Miller's statements to Officer Sharp were inadmissible because they

were in response to questioning, and he asserts that the statements were made following the shooting of two people in close proximity to Miller. However, we note that "[t]he rationale for the admissibility of an excited utterance is its trustworthiness." *State v. Wingard*, 317 N.C. 590, 598, 346 S.E.2d 638, 644 (1986). In *State v. Reid*, 335 N.C. 647, 662, 440 S.E.2d 776, 784 (1994), our Supreme Court explained the doctrine of excited utterance as follows:

> The reason for allowing this exception is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces "spontaneous and sincere" utterances. "[T]he trustworthiness of this type of utterance lies in its spontaneity . . . ." There is simply no time to "fabricate or contrive" statements spontaneously made during the excitement of an event. For a statement to qualify as an "excited utterance," "there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication."

(citations omitted) (alteration in original).

"A trial court 'has broad discretion over the scope of cross-examination' and its 'rulings regarding the scope of cross[-] examination will not be held in error in the absence of a showing that the verdict was improperly influenced by the limited scope of the cross-examination.'" *State v. Johnson*, 164 N.C. App. 1, 11, 595 S.E.2d 176, 182 (2004) (citation omitted). In the instant case, Officer Sharp testified at trial that Miller was "intoxicated" and "upset," and that he did not take a written statement from her but was able to "get an idea of . . . her account[]" of the shootings. During *voir dire*, Officer Sharp testified that Miller changed part of her story while talking to him, and when he asked her why she had two different stories, Miller did not respond. Miller's statements regarding Hames' possession of what appeared to be handgun as well as her statements regarding the argument between defendant and Hames tend only to corroborate testimony provided by defendant and Officer Sharp during defendant's case-in-chief. In light of the foregoing, we conclude that defendant has failed to demonstrate that the trial court abused its discretion by not admitting Miller's statements. Accordingly, we overrule defendant's second argument.

[3] Defendant's final argument is that the trial court erred by entering judgment against him for both assault with a deadly weapon

inflicting serious injury upon Marzette and attempted voluntary manslaughter of Marzette. Because we conclude that these offenses are mutually exclusive, we order a new trial with respect to the shooting of Marzette.

We note initially that N.C.R. App. P. 10(b)(1) (2005) provides that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." In the instant case, following the jury's verdicts, the State requested that the trial court sentence defendant to concurrent forty-six to sixty-five month sentences for attempted voluntary manslaughter of Marzette and assault with a deadly weapon inflicting serious injury upon Marzette. Defendant thereafter requested that "with regard to the two charges of assault with a deadly weapon inflicting serious injury and attempted voluntary manslaughter, since they arise out of the very same conduct, . . . the Court particularly should consider consolidation of those charges." The trial court initially addressed "the question of whether or not the Court should arrest judgment on the attempted voluntary [manslaughter]" conviction by noting that "the law is just evolving on that, but it would appear that attempted voluntary [manslaughter] is an alter[n]ative theory to [assault with a deadly weapon with intent to kill inflicting serious injury]." Both parties thereafter provided argument to the trial court on the issue, with defendant contending that concurrent sentences for the two convictions created "a double jeopardy problem" that required him to "request the Court not to sentence on both." Following argument from both parties, the trial court determined that "it is not double jeopardy and the defendant could be sentenced consecutively[,]" but "under the circumstances of this case the Court in its discretion should run those [convictions' sentences] concurrently."

Defendant contends on appeal that the trial court erred by failing to arrest judgment on either the attempted voluntary manslaughter conviction or the assault with a deadly weapon inflicting serious injury conviction because the offenses are mutually exclusive. However, we note that because defendant did not assert this precise contention at trial, defendant's theory on appeal does not reflect the same "specific grounds" as those provided to the trial court, and therefore his argument seemingly violates N.C.R. App. P. 10. Nevertheless, in our discretion pursuant to N.C.R. App. P. 2 (2005), we

have chosen to review defendant's argument on appeal, and, as discussed below, we find it persuasive.

The elements of assault with a deadly weapon with intent to kill inflicting serious injury are: (1) an assault; (2) with a deadly weapon; (3) an intent to kill; and (4) infliction of a serious injury not resulting in death. *State v. Grigsby*, 351 N.C. 454, 456, 526 S.E.2d 460, 462 (2000). "A specific intent to kill is an essential element of assault with a deadly weapon with intent to kill inflicting serious injury." *State v. Daniel*, 333 N.C. 756, 763, 429 S.E.2d 724, 729 (1993).

This Court has previously held that "attempted voluntary manslaughter is (1) a crime in North Carolina, and, (2) a lesser-included offense of attempted first-degree murder[.]" *State v. Rainey*, 154 N.C. App. 282, 283, 574 S.E.2d 25, 26, *disc. review denied*, 356 N.C. 621, 575 S.E.2d 520 (2002). Although voluntary manslaughter had previously been considered a general intent crime, *see State v. McCoy*, 122 N.C. App. 482, 485, 470 S.E.2d 542, 544, *disc. review denied*, 343 N.C. 755, 473 S.E.2d 622 (1996), in *Rainey*, we recognized that "in North Carolina, heat of passion voluntary manslaughter is essentially a first-degree murder, where the defendant's reason is temporarily suspended by legally adequate provocation." 154 N.C. App. at 289, 574 S.E.2d at 29. Therefore, we concluded that

> [t]he specific intent to kill does exist in the mind of [a defendant charged with attempted voluntary manslaughter]; however, the defendant is only legally culpable for the general intent because the "specific intent" is not based on "cool reflection." The specific intent is based on an "adequate provocation" that would cause an individual with an ordinary firmness of mind . . . to commit an act spawned by provocation rather than malice.

*Id.*

In the instant case, defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury upon Marzette, and attempted murder of Marzette. The jury subsequently found defendant guilty of assault with a deadly weapon inflicting serious injury and attempted voluntary manslaughter. Defendant contends that the jury's determination that defendant did not commit assault with a deadly weapon with intent to kill inflicting serious injury upon Marzette excluded the possibility that defendant committed attempted voluntary manslaughter against her. We agree.

"Where several offenses charged allegedly arise from the same transaction, and the offenses are mutually exclusive, a defendant may not be convicted of more than one of the mutually exclusive offenses." *State v. Hall*, 104 N.C. App. 375, 386, 410 S.E.2d 76, 82 (1991). In *State v. Speckman*, 326 N.C. 576, 391 S.E.2d 165 (1990), the defendant was convicted of one count of embezzlement and one count of obtaining property by false pretenses, both of which arose from a single transaction involving the sale of a waterslide operation. On appeal, our Supreme Court noted that because "property cannot be obtained simultaneously pursuant to both lawful and unlawful means, guilt of either embezzlement or false pretenses necessarily excludes guilt of the other." *Id.* at 578, 391 S.E.2d at 167. Therefore, the Court held that although it was not improper for the State to bring both charges against the defendant or for the trial court to submit both charges to the jury, because the offenses were mutually exclusive, the trial court was required to instruct the jury that it may convict the defendant of only one of the offenses or the other, but not both. *Id.* at 579, 391 S.E.2d at 167.

Similarly, in *Hall*, defendants Hall and Shoats were charged with three counts of conspiracy to traffick in cocaine, the first count covering a period from 10 April 1989 through 15 April 1989, the second count covering a period of 23 April 1989 through 31 May 1989, and the third count covering a period of 10 April 1989 through 31 May 1989. The jury convicted the defendants of each charge. The trial court subsequently arrested judgment on the third charge and sentenced the defendants for the remaining two convictions. On appeal, this Court concluded that the three offenses were mutually exclusive, in that the determination that the defendants entered into one agreement to commit a series of unlawful acts over a period of time was inconsistent with the determination that multiple agreements to commit the same series of acts over the same period of time were also made. 104 N.C. App. at 386, 410 S.E.2d at 82. We noted that "either one agreement was made or two agreements were made. Both views cannot exist at the same time." *Id.* Accordingly, we vacated the defendants' convictions on the separate offenses.

In the instant case, by finding defendant guilty of the lesser-included offense of assault with a deadly weapon inflicting serious injury, the jury necessarily found that defendant did not have the "intent to kill" Marzette required to convict defendant of the greater offense of assault with a deadly weapon with intent to kill inflicting serious injury. However, by subsequently finding defendant guilty of

attempted voluntary manslaughter, the jury also necessarily found that defendant *had* the intent to kill Marzette, but that "heat of passion, arising from sudden provocation, *negated* the element of malice and made [defendant's] mind incapable of 'cool' premeditation and deliberation." *Rainey*, 154 N.C. App. at 288, 574 S.E.2d at 29. These two verdicts are logically inconsistent, in that defendant either did or did not have the intent to kill Marzette when he shot her. Because "[b]oth views cannot exist at the same time[,]" *Hall*, 104 N.C. App. at 386, 410 S.E.2d at 82, we conclude that the trial court erred by entering judgment on both convictions.

Although we note that the trial court imposed the same sentence for both convictions and ordered that they run concurrent, our courts have previously held that separate convictions for mutually exclusive offenses, even though consolidated for a single judgment, have potentially severe adverse collateral consequences. *See Ball v. United States*, 470 U.S. 856, 865, 84 L. Ed. 2d 740, 748 (1985); *State v. Barnes*, 324 N.C. 539, 540, 380 S.E.2d 118, 119 (1989) (per curiam). Furthermore, "[w]here the trial court fails to instruct the jury that it may convict the defendant of only one of the mutually exclusive offenses, the jury returns guilty verdicts on the mutually exclusive offenses, and the trial court consolidates the offenses for a single judgment, the defendant is entitled to a new trial." *Hall*, 104 N.C. App. at 387, 410 S.E.2d at 82 (citing *Speckman*, 326 N.C. at 580, 391 S.E.2d at 167-68). Therefore, in light of the foregoing, we are compelled to hold that the trial court's error in the instant case was not harmless, and, accordingly, we order a new trial with respect to the shooting of Marzette.

In conclusion, we hold that defendant received a trial free of prejudicial error with respect to the voluntary manslaughter of Hames. However, with respect to the shooting of Marzette, we order a new trial.

No error in part; new trial in part.

Judges CALABRIA and GEER concur.