STATE OF NORTH CAROLINA v. CHANG YANG

No. COA04-1206

(Filed 6 December 2005)

**1. Homicide— attempted voluntary manslaughter—valid offense**

Defendant's contention that attempted voluntary manslaughter is not an offense was overruled; the Court of Appeals is without authority to ignore its own precedent.

**2. Appeal and Error— invited error—drafting instructions**

Defendant cannot complain on appeal about language in attempted voluntary manslaughter instructions where he helped draft the instructions and communicated to the trial court that he was satisfied.

**3. Criminal Law— voluntary intoxication—instruction not given—no error**

The failure to instruct on voluntary intoxication in an manslaughter and assault prosecution was not plain error where nothing in the record indicated that defendant was without the mental faculties to form the necessary mens rea.

**4. Criminal Law— mutually exclusive convictions—assault with a deadly weapon and attempted voluntary manslaughter**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury and attempted murder arising from

STATE v. YANG

[174 N.C. App. 755 (2005)]

a stabbing, convictions for assault with a deadly weapon inflicting serious injury and attempted voluntary manslaughter were mutually exclusive. Defendant either did or did not have the intent to kill at the time of the stabbing.

**5. Constitutional Law— double jeopardy—convictions for assault with a deadly weapon and attempted voluntary manslaughter**

Double jeopardy was violated by convictions for assault with a deadly weapon inflicting serious injury with intent to kill and attempted voluntary manslaughter. Where a felonious assault offense includes intent to kill as an element, attempted voluntary manslaughter is a lesser included offense of the assault.

**6. Homicide— indictment—attempted voluntary manslaughter**

Indictments were sufficient to support defendant's convictions for attempted voluntary manslaughter where they alleged that defendant "did unlawfully, willfully, and feloniously and of malice aforethought attempt to kill and murder [the victim and her father]."

**7. Appeal and Error— invited error—drafting instruction— no prejudice—no plain error review**

An instruction on self-defense was not reviewable as plain error where defendant helped create the instruction. Defendant invited any error and cannot now assert prejudice.

Appeal by defendant from judgments entered 20 April 2004 by Judge Jesse B. Caldwell, III, in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 May 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Ronald M. Marquette, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Kelly D. Miller, for defendant-appellant.*

CALABRIA, Judge.

Chang Yang ("defendant") appeals from judgments entered on jury verdicts of guilty of two counts of attempted voluntary manslaughter, one count of assault with a deadly weapon inflicting serious injury, and one count of assault with a deadly weapon inflict-

ing serious injury with intent to kill. We find no error in part, remand in part, and grant defendant a new trial in part.

The State presented evidence that defendant and Der Vang (the "victim") met in July of 1999 and were married in a non-legal, traditional Hmong ceremony in July of 2002. Prior to the marriage, the couple experienced difficulties in the relationship, including a break-up from February of 2000 to May of 2000 and at least one instance of physical abuse by defendant. The victim also testified as to specific instances of violence. In October 2000, the victim attempted to break up with defendant, and he became angry. Because the victim was at work, she and defendant agreed to finish the discussion at her home. Defendant followed the victim home after work and began pushing and shoving her. Eventually, defendant pinned the victim down on her bed and would not let her up for approximately two to three hours until the victim's brother arrived and convinced defendant to leave. During the incident, defendant threatened to kill himself if the victim left him.

In June of 2002, defendant and the victim were at his parents' house, and defendant tried to convince the victim to sign her car over to him. When the victim refused and attempted to leave, defendant dragged her back inside the house, procured a gun, and threatened to kill himself and the victim. After defendant's father disarmed him and his parents went to sleep, defendant took the keys to the victim's car and tied her hands to his hands before they went to sleep to prevent her from leaving during the night. Another incident occurred that month when the victim did not wish to accompany defendant to his brother's house. Defendant forced the victim into the car, and when she continued to protest, defendant threatened to cause an accident and kill them both. When they arrived at the house where defendant's brother lived, defendant again procured a gun and threatened to kill himself and the victim if she left him.

On 28 September 2002, the victim's family gathered to celebrate the birthday of Panhia Vang ("Vang"), the victim's sister. Both Vang and the victim's parents spent the night at defendant's invitation. During the night, defendant awakened the victim because he was hungry and wanted money to purchase food. Defendant again awakened the victim when he returned and wanted to discuss their relationship. The victim refused to discuss the relationship with defendant because of the time and the presence of her parents in the nearby bedroom, causing defendant to become physically abusive, which resulted in the victim spitting up blood. The victim went to sleep on

the floor in another bedroom where Vang and other family members were sleeping, but defendant followed her and tried to continue the discussion. Vang and the victim then went downstairs to sleep on the couch, and defendant again followed them.

At approximately six in the morning, defendant called his parents and asked them to come to the victim's house and help with their marital problems. Defendant, the victim, and their parents discussed the situation and agreed that defendant should leave with his parents. The parents further suggested going out for breakfast to continue the discussion, with everyone agreeing except defendant. All of the parents, except the victim's mother, went outside the house, and the victim went upstairs to get dressed. While the victim was changing, defendant came upstairs and locked the bedroom door, refusing to allow the victim to leave. The victim yelled out of the window for help from the parents. They came inside but could not get in the bedroom because of the locked door.

The victim struggled with defendant and was able to release the lock on the door. The parents forced their way in, but defendant grabbed the victim, with one arm wrapped around her neck, and pulled out a knife. Defendant began dragging the victim and, when she fell, he stabbed her. When her father tried to intervene, defendant began stabbing him as well. Subsequently, defendant dragged the victim to the top of the stairs, where he was hit by either the victim's mother or father, causing both him and the victim to fall down the stairs. At some point after falling down the stairs, the victim's father cut defendant's leg, and they subdued him and bound his hands with a cord. When the police arrived, defendant was being held down by his father.

Defendant testified in his own defense. Defendant testified he called his parents on 29 September 2002 because he was afraid for his life and was worried the victim would "do something to" him. He claimed the reason he went to the bedroom while the victim was changing was to convince her to go to his parents' house. He admitted to not allowing the victim to leave and causing her to call for help from the window but asserted he was the one who unlocked the bedroom door to let their parents into the room. After opening the door, the victim's father "rushed into the room" and punched him in the mouth, despite the fact that he had not injured the victim in any way. Then, defendant grabbed the victim and retreated.

When they reached the bathroom, defendant testified he saw a knife lying on the sink and began waiving it at the victim's father

because he feared further harm. Defendant asserted the victim's father "kind of back[ed] down a little bit and then he came back with a knife in his right hand." Defendant and the victim's father waved their knives at each other while defendant held the victim close to him and the victim had both hands around his waist, refusing to let go. Defendant pushed the victim away from him and pushed the victim's father to the ground but could not remember what he did with the knife. He could not explain how the victim and her father were stabbed. Defendant testified he was hit on the head at the top of the stairs and attacked after he fell down the stairs and was crawling away from the victim and her parents. As a result of the attack, defendant was subdued and bound until police arrived; however, defendant testified he was not being held down by his father. Defendant also testified he had taken ecstacy the night before, did not instigate any violence on the morning of 29 September, and had never physically harmed the victim.

Defendant was charged with two counts of attempted murder and two counts of assault with a deadly weapon inflicting serious injury with intent to kill on the victim and her father. At the close of the State's evidence and again at the close of all the evidence, defendant moved to dismiss all charges. The trial court denied defendant's motions, and the jury returned verdicts of two counts of attempted voluntary manslaughter, one count of assault with a deadly weapon inflicting serious injury on the victim's father and one count of assault with a deadly weapon inflicting serious injury with intent to kill on the victim. Defendant was sentenced to a minimum of 148 months to a maximum of 214 months in the North Carolina Department of Correction. Defendant appeals.

I. Attempted Voluntary Manslaughter

[1] In his first assignment of error, defendant "respectfully contends [*State v. Rainey*, 154 N.C. App. 282, 574 S.E.2d 25, *disc. rev. denied*, 356 N.C. 621, 575 S.E.2d 520 (2002)], recognizing attempted voluntary manslaughter as a criminal offense in North Carolina, was wrongly decided[;] [therefore, the] attempted voluntary manslaughter convictions must be vacated because the offense does not exist." This Court is without authority to ignore its own precedent, which is binding upon it unless overturned by a higher court. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Defendant's argument is preserved for further appellate review and overruled.

**[2]** In his next two assignments of error, defendant alternatively argues "the trial court committed plain error by submitting attempted voluntary manslaughter on the unavailable theory of imperfect self-defense" and by failing to instruct the jury on the essential elements of attempted voluntary manslaughter. However, the trial court stated that the instruction for the attempted murder convictions "was submitted to the Court" after "counsel for the parties, the State and the defendant, ha[d] endeavored to craft an amended version of [the attempted first-degree murder] pattern jury instruction . . . ." In addition, the following colloquy was contained in the transcript:

> [THE STATE]: I would just like to put on the record that the State, the Court, and defense counsel spent about two hours or so hammering out the language of the attempted first-degree murder, self-defense, and attempted voluntary manslaughter instruction and that the parties were satisfied with that instruction as the Court intended to give it and gave it. . . .

> THE COURT: Thank you, sir. . . .

> [DEFENSE COUNSEL]: I have nothing to add, Your Honor.

Defendant helped draft and communicated to the trial court that he was satisfied with the instruction that was given, and error, if any, in the instruction was invited error. *See State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001) (noting that "a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review"). Defendant cannot now complain on appeal about the language in the instructions he helped craft at trial. These assignments of error are overruled.

II. Voluntary Intoxication

**[3]** In his fourth assignment of error, defendant asserts the trial court committed plain error in failing to instruct the jury on the defense of voluntary intoxication. "Under plain error review, 'reversal is justified when the claimed error is so basic, prejudicial, and lacking in its elements that justice was not done[,]' " *State v. Miller*, 357 N.C. 583, 592, 588 S.E.2d 857, 864 (2003) (quoting *State v. Prevatte*, 356 N.C. 178, 258, 570 S.E.2d 440, 484 (2002)), and, "absent the [claimed] error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002). Defendant is limited to plain error review as a result of his failure to object at trial.

Voluntary intoxication is an affirmative defense that can be used to negate the *mens rea* required in certain criminal offenses. *State v.*

*Chapman*, 359 N.C. 328, 378, 611 S.E.2d 794, 830 (2005). To raise the issue, however, a defendant must produce more than evidence of mere intoxication; he "must produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form" the required *mens rea. Id.*, 359 N.C. at 378, 612 S.E.2d at 830 (citation and internal quotation marks omitted). In the instant case, there was some indication that defendant took ecstacy on 28 September 2002 in an effort to self-medicate his alleged depression. However, nothing in the record indicates that, at the time of the assaults, defendant was without the mental faculties to form the *mens rea* necessary to support the pending charges. The State's theory of the case was that defendant was a controlling and abusive individual who used violence when faced with the prospect of losing the victim's love and companionship. Defendant's theory of the case was that he was defending himself from an unprovoked attack. Defendant has failed to show plain error on the part of the trial court in failing to instruct on the defense of voluntary intoxication. Accordingly, this assignment of error is overruled.

III. Mutual Exclusivity

**[4]** Defendant assigns error to the trial court's entry of judgment on the charges of assault with a deadly weapon inflicting serious injury and attempted voluntary manslaughter for stabbing the victim's father on the grounds that these charges are mutually exclusive. Recently, this Court held that when a jury rejects the greater offense of assault with a deadly weapon inflicting serious injury with intent to kill in favor of the lesser-included offense of assault with a deadly weapon inflicting serious injury, the jury cannot convict a defendant of both the lesser-included offense and attempted murder upon the same victim because the offenses are mutually exclusive. *State v. Hames*, 170 N.C. App. 312, 320, 612 S.E.2d 408, 414-15 (2005), *disc. rev. denied*, 360 N.C. 70, 612 S.E.2d 408 (2005). In so doing, we reasoned that "by finding defendant guilty of the lesser-included offense of assault with a deadly weapon inflicting serious injury, the jury necessarily found that defendant did not have the 'intent to kill' [the victim] required to convict defendant of the greater offense of assault with a deadly weapon with intent to kill inflicting serious injury[,] [which was also submitted to the jury]." *Id.*, 170 N.C. App. at 322, 612 S.E.2d at 415. We went on to note that, "by subsequently finding defendant guilty of attempted voluntary manslaughter, the jury also necessarily found that defendant *had* the intent to kill [the victim.] *Id.* That precise situation is presented in the instant case. Either defend-

ant did or did not have the intent to kill at the time he stabbed the victim's father, and the jury verdicts are mutually exclusive. As in *Hames*, we hold defendant is entitled to a new trial with respect to the stabbing of the victim's father. We additionally note the State has asserted *Hames* was incorrectly decided because jury verdicts convicting a defendant of attempted voluntary manslaughter and assault with a deadly weapon inflicting serious injury are merely inconsistent. The State's argument is preserved for further appeal and overruled.

IV. Double Jeopardy

**[5]** Next, defendant asserts the trial court erred by submitting to the jury both the attempted voluntary manslaughter charges and the felonious assault charges with respect to both the victim and her father and by imposing consecutive sentences for these offenses in violation of his state and federal constitutional rights to be free from double jeopardy. Since we have held that defendant is entitled to a new trial with respect to the charges against defendant for the altercation between him and the victim's father, we consider only defendant's assertion regarding the charges involving the victim.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also* N.C. Const. art. I, § 19. The Clause protects against, *inter alia*, multiple punishments for the same offense. *State v. Tirado*, 358 N.C. 551, 578, 599 S.E.2d 515, 534 (2004), *cert. denied*, *Queen v. North Carolina*, —— U.S. ——, 161 L. Ed. 2d 285 (2005). The test for determining if a defendant has been impermissibly placed in double jeopardy involves examining whether the evidence required to support the two convictions is identical. "If proof of an additional fact is required for each conviction which is not required for the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same." *Id.*, 358 N.C. at 579, 599 S.E.2d at 534 (citation and internal quotation marks omitted). "The elements of assault with a deadly weapon with intent to kill inflicting serious injury are: (1) an assault, (2) with the use of a deadly weapon, (3) with an intent to kill, and (4) inflicting serious injury, not resulting in death." *Id.* (citing N.C. Gen. Stat. § 14-32(a) (2003)).

The State concedes, and we agree, that where a felonious assault offense includes, as an element, the intent to kill, attempted voluntary manslaughter is a lesser included offense of the assault. Accordingly,

we remand the convictions to the trial court with respect to the victim to allow the trial court to arrest the judgment on the conviction for attempted voluntary manslaughter.

## V. Indictment

[6] In his next assignment of error, defendant asserts his convictions for attempted voluntary manslaughter must be vacated because they are not supported by the indictments. Specifically, defendant argues the indictments fail to sufficiently allege attempted first-degree murder or attempted voluntary manslaughter. The language of the indictments for both the victim and her father is as follows:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 29th day of September, 2002, in Mecklenburg County, [defendant] did unlawfully, willfully, and feloniously and of malice aforethought attempt to kill and murder [the victim and her father].

In State v. Bullock, 154 N.C. App. 234, 244, 574 S.E.2d 17, 23 (2002), this Court considered an indictment for attempted first-degree murder that read as follows: "[t]he jurors for the State upon their oath present that on or about the date of the offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did attempt to kill and murder Yvonne Bullock." Because the indictment lacked the phrase "malice aforethought," we held the indictment failed to properly allege attempted first-degree murder. Id., 154 N.C. App. at 244, 574 S.E.2d at 23. However, this Court went on to note that the indictment did sufficiently allege the lesser-included offense of attempted voluntary manslaughter, notwithstanding the lack of the phrase "malice aforethought." Id., 154 N.C. App. at 245, 574 S.E.2d at 24. The indictment in the instant case is identical to that considered in Bullock except, here, it does set forth that defendant acted with "malice aforethought." As in Bullock, the indictments were sufficient to charge attempted voluntary manslaughter, and this assignment of error is overruled.

## VI. Self-Defense

[7] In his final assignment of error, defendant asserts "the trial court instructed on self-defense in all four cases[,] [but] the trial court's self-defense instructions were erroneously incomplete because they failed to instruct on the 'castle doctrine' and defense of habitation." Defendant again assigns plain error because he did not object at trial.

As noted previously, however, plain error review is not available in the instant case because the given self-defense instruction was one defendant helped create. As with the previous assignments of error involving such instructions, defendant invited the error, if any, and cannot now assert he was prejudiced thereby. This assignment of error is overruled.

No error in part, new trial in part, and remanded in part.

Judges McGEE and ELMORE concur.