STATE OF NORTH CAROLINA v. PHILLIP DAVID ALEXANDER

No. COA01-1249

(Filed 3 September 2002)

### 1. Evidence— pretrial statement—slight variations—admissible as corroboration

The trial court did not err in a first-degree murder prosecution by admitting a statement given by a State's witness which defendant contended did not corroborate the witness's testimony. Slight variations represented minor inconsistencies at most and the statement was admissible as corroborative evidence.

### 2. Firearms and Other Weapons— discharging firearm into occupied property—sufficiency of evidence

In a prosecution for discharging a firearm into occupied property, there was sufficient evidence that defendant shot the victim while standing outside the car in which the victim was sitting and the court did not err by denying a motion to dismiss.

Appeal by defendant from judgment entered 27 February 2001 by Judge William Z. Wood, Jr., in Wilkes County Superior Court. Heard in the Court of Appeals 13 August 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Buren R. Shields, III, for the State.*

*White and Crumpler, by Dudley A. Witt, for defendant appellant.*

TIMMONS-GOODSON, Judge.

On 27 February 2001, a jury found Phillip David Alexander ("defendant") guilty of first-degree murder for the death of Ernest Junior Bates ("Bates") under the felony murder rule. For the reasons hereafter stated, we find no error by the trial court.

The State presented evidence at trial tending to show the following: Defendant and the victim, Bates, had an antagonistic relationship. Defendant's wife was romantically involved with Bates prior to her marriage to defendant, and her occasional encounters with Bates after her marriage caused friction between the two men.

On 24 December 1999, defendant celebrated Christmas Eve at home with his wife and several family members and friends. Jason

STATE v. ALEXANDER

[152 N.C. App. 701 (2002)]

Lee Handy ("Handy"), a friend of the family, was present at the celebration and testified for the State. According to Handy, defendant received several telephone calls from Bates over the course of the evening and into the following morning, during which defendant and Bates threatened and cursed one another. Before leaving for work the following morning, defendant loaded his .357 Magnum revolver and expressed his intent on taking an alternate route to work in the hopes of encountering Bates. Referring to Bates, defendant stated that, "If I see the son-of-a-bitch, I'll kill him." When defendant returned to the house approximately forty-five minutes later, he was bleeding profusely from a bullet wound in his right shoulder. Defendant explained that he had confronted Bates, and that the two men had exchanged gunfire.

The victim's nephew, Gary Medley ("Medley"), witnessed defendant's encounter with Bates and testified for the State. Medley testified that, early on the morning of 25 December 1999, he drove his uncle to a local store to purchase cigarettes. On returning from the store, they passed defendant's residence, and Bates instructed Medley to park his vehicle at a church directly across from defendant's home. Defendant emerged from his house with a rifle in his hand, and the two men shouted obscenities at one another until Bates and Medley departed. According to Medley, he and Bates were on their way to pick up Bates' vehicle later that morning when they realized that the truck in front of them belonged to defendant. Bates instructed Medley to follow defendant. Defendant subsequently pulled his vehicle to the side of the road, and Medley stopped his car beside that of defendant's. Bates and defendant then exchanged further insults through the open windows, and defendant brandished his pistol. Bates attempted to exit the vehicle, but Medley dissuaded him from doing so, and began turning the car around. At that point, defendant "[came] barreling up in his pickup, blocked [Medley's] car in . . . jumped out, and [ran] behind both vehicles." Medley testified that defendant then "jerk[ed] [Bates'] door open, and grab[bed] him, grab[bed] his coat, and he thr[ew] the gun there in his stomach . . . and fire[d] it." After defendant fired his weapon a second time, Bates pulled out his own pistol and fired it at defendant, injuring defendant's right shoulder. Defendant stepped back from the vehicle and fired his weapon a third time. The three bullets fired by defendant struck Bates in the chest and upper right arm, killing him.

Defendant testified in his own defense. According to defendant, Bates had threatened to "bury him" on several previous occasions.

Defendant confirmed that he and Bates had spoken on the telephone the morning of 25 December 1999, and that the two men had exchanged harsh words and insults. Defendant testified that when Bates stopped at the church across from defendant's house early that morning, Bates brandished a pistol and threatened to kill defendant. Defendant explained that he took his .357 revolver with him to work because he was scared of Bates. Driving to work, defendant became more frightened when he realized that Bates was following him. Defendant testified that Medley's car then "pulled over," and, although he was "scared to death[,]" defendant decided to "try to talk to the man to see if he would go on and leave me alone." Defendant exited his vehicle, pistol in hand. As he approached Medley's vehicle, Bates shot him in the shoulder. Defendant then "just started shooting. I stepped in, started shooting, because I was scared I was going to die." Defendant admitted that he shot Bates three times, killing him, but insisted that he had no other choice.

After considering the evidence, the jury found defendant guilty of first-degree murder under the felony murder rule. The jury further found defendant guilty of three counts of discharging a weapon into occupied property, and of possession of a firearm by a felon. The trial court sentenced defendant to life imprisonment without parole, from which sentence defendant appeals.

---

Defendant presents two issues on appeal, arguing that the trial court erred in (1) admitting into evidence a statement given by a witness to law enforcement officers; and (2) denying defendant's motion to dismiss the felony charges of discharging a firearm into occupied property. For reasons discussed herein, we conclude that defendant's assignments of error have no merit.

[1] Defendant first argues that the trial court erred by admitting into evidence a statement given by Handy to law enforcement officers approximately two weeks before defendant's trial. Defendant contends that Handy's statement did not corroborate his testimony at trial and was therefore inadmissible as a prior consistent statement. Defendant further argues that, as the statement was made only two weeks before trial and more than a year after the events in question, the statement lacked credibility. Because Handy's statement contained prejudicial information and was inadmissible, defendant contends that he is entitled to a new trial. We disagree.

Under Rule 613 of the North Carolina Rules of Evidence, prior consistent statements by a witness are admissible to corroborate

sworn trial testimony. *See* N.C. Gen. Stat. § 8C-1, Rule 613 (2001); *State v. Gell*, 351 N.C. 192, 204, 524 S.E.2d 332, 340, *cert. denied*, 531 U.S. 867, 148 L. Ed. 2d 110 (2000). Where a witness's prior statement contains facts that manifestly contradict his trial testimony, however, such evidence may not be admitted " 'under the guise of corroborating his testimony.' " *State v. Frogge*, 345 N.C. 614, 618, 481 S.E.2d 278, 280 (1997) (quoting *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 574 (1986)).

Defendant points to four specific statements given by Handy to law enforcement officers that defendant contends do not corroborate Handy's testimony at trial. None of the four statements contains "manifestly contradictory" information, however. For example, at trial, Handy testified that defendant stated, "If I see the son-of-a-bitch, I'll kill him." In his statement to police, Handy reported that defendant said, "If I see the son-of-a-bitch I'm going, I'm going to shoot him." We conclude that the slight variation between these two statements represents a minor inconsistency at most. Clearly, there is nothing particularly contradictory about defendant's avowal to "kill" the victim rather than to "shoot" him. Further examples proffered by defendant are equally baseless. For instance, according to Handy's testimony, defendant returned to the house with the bullet wound in his shoulder "approximately thirty to forty-five minutes" after leaving. In his statement, however, Handy indicated that the time period was approximately forty-five minutes. Again, the information given in these two statements does not reflect significant discrepancies such as to render the statements inconsistent with one another. *See Gell*, 351 N.C. at 204, 524 S.E.2d at 341 (stating that, "[w]hile the earlier statements contained slight variations and some additional information, they contained nothing directly contradicting the witness' trial testimony").

As Handy's trial testimony was consistent with his prior statement, the statement was admissible as corroborative evidence. The fact that the prior statement was made two weeks before trial goes to the weight of the evidence, not to its admissibility. *See* Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 165 (5th ed. 1998) (noting that, "the more narrow the time gap between events in issue and the prior conduct or statement, the more persuasive it is"). We therefore overrule defendant's first assignment of error.

[2] By his second assignment of error, defendant contends that the trial court erred in denying his motion to dismiss the charges of discharging a firearm into occupied property, the felony upon which

defendant's felony murder conviction was based. Defendant argues that there was insufficient evidence that he was outside of the vehicle when he fired the weapon and thus cannot properly be charged with discharging a firearm "into" occupied property. Defendant's argument is without merit.

Upon a defendant's motion to dismiss, the court must consider whether the State has presented substantial evidence of each essential element of the crime charged. *See State v. Allen*, 346 N.C. 731, 739, 488 S.E.2d 188, 192 (1997). Substantial evidence is such "relevant evidence that a reasonable mind might accept as sufficient to support a conclusion." *Id.* In examining the evidence, the court must view any contradictions or discrepancies in the light most favorable to the State, allowing all reasonable inferences to be drawn therefrom. *See State v. Gainey*, 343 N.C. 79, 85, 468 S.E.2d 227, 231 (1996). A motion to dismiss is properly denied where there is substantial evidence supporting a finding that the offense charged was committed. *See State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

Under section 14-34.1 of the North Carolina General Statutes, "[a]ny person who willfully or wantonly discharges or attempts to discharge . . . [a] firearm . . . into any . . . vehicle . . . while it is occupied is guilty of a Class E felony." N.C. Gen. Stat. § 14-34.1 (2001). In the instant case, it is undisputed that defendant intentionally fired his pistol at the victim, who was sitting in an occupied vehicle at the time. Defendant's only argument is that he did not fire his weapon "into" the vehicle, because there was some evidence at trial tending to show that defendant was inside the vehicle when he shot the victim. We disagree.

"[A] firearm can be discharged 'into' occupied property even if the firearm itself is inside the property, so long as the person discharging it is not inside the property." *State v. Mancuso*, 321 N.C. 464, 468, 364 S.E.2d 359, 362 (1988); *see also State v. Bray*, 321 N.C. 663, 670, 365 S.E.2d 571, 576 (1988) (holding that, where the defendant fired his weapon while reaching inside the vehicle, the defendant could properly be charged with discharging a firearm "into" occupied property). In the case at bar, there was substantial evidence from which a jury could find that defendant fired "into" occupied property. Medley indicated that although defendant was "almost leaning inside the car," he was definitely "standing outside" and "in the crease of the door" when he shot the victim. Moreover, when Bates fired his weapon at defendant, defendant moved "a step back" before discharging his weapon a third time. Defendant testified that he was sev-

eral feet from the car when he "just started shooting." Viewing the evidence in the light most favorable to the State, we conclude that there was substantial evidence that defendant was standing outside the automobile when he shot the victim, thereby discharging his weapon "into" an occupied vehicle. The trial court did not err in denying defendant's motion to dismiss, and we therefore overrule defendant's second assignment of error.

In conclusion, we hold that the trial court did not err in admitting a prior consistent statement by a witness; nor did it err in denying defendant's motion to dismiss the charges of discharging a firearm into occupied property.

No error.

Judges GREENE and HUNTER concur.