An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-582

Filed 3 December 2025

New Hanover County, Nos. 21CR0058802-640, 21CR0058803-640

STATE OF NORTH CAROLINA

       v.

JABAR BALLARD, Defendant.

Appeal by Defendant from judgment entered 8 September 2023 by Judge G. Frank Jones in New Hanover County Superior Court. Heard in the Court of Appeals 26 February 2025.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Mia B. Bass, for the State-Appellee.*

> *Attorney William D. Spence, for the Defendant-Appellant.*

STADING, Judge.

Jabar Ballard ("Defendant") appeals from the trial court's judgment entered upon a jury verdict finding him guilty of attempted first degree murder, discharging a firearm into occupied property, and assault with a deadly weapon. Defendant argues the trial court erred by denying his motions to dismiss for insufficiency of the

evidence.  Defendant also argues the trial court plainly erred when instructing the jury.  For the reasons below, we hold no error.

## I.    Background

On 30 November 2021, a shooting occurred at a strip mall located on Market Street in Wilmington, North Carolina.  The events took place near two local businesses and a church contained within two buildings, separated by a road.  "City Tobacco & Vape" has its own parking lot.  Located across the street, "Chic Lady" and "Vino Nuevo Ministry Church" share a parking lot.  Around 6:53 p.m., Defendant parked his car in the City Tobacco & Vape parking lot and crossed the street toward Chic Lady.  Soon after, Eric Wilson, arrived separately and parked his vehicle in Chic Lady's parking lot.

The record tends to show: around 7:00 p.m., Mustafa Ganbur, an employee of Chic Lady, observed Defendant and Mr. Wilson enter the store together.  Mr. Ganbur recounted an argument between Defendant and Mr. Wilson started in the store and continued as they went back to the parking lot.  Mr. Ganbur went outside and observed the argument.  After five to six minutes of fighting, a coworker prompted Mr. Ganbur to get back inside the store.  Mr. Granbur heard gunshots as he reentered the store.  His coworker immediately called the police.

As Defendant and Mr. Wilson argued in the shared parking lot, congregants were arriving at Vino Nuevo Ministry Church.  Two of these congregants, Jose Juarez and Nereida Dominguez, observed Defendant and Mr. Wilson arguing outside.  Out

of concern, Mr. Juarez directed his wife and children to enter the church while he observed the argument from the church's front door. Mr. Juarez testified he witnessed Defendant pull out a pistol, point it at the head of Mr. Wilson, and fire. The bullet missed hitting Mr. Wilson, who then ran towards the church. Mr. Juarez let Mr. Wilson inside the church. Defendant then forced the door open, spotted Mr. Wilson, and shot him. Mr. Juarez also recounted, after shooting Mr. Wilson, Defendant stood next to Mr. Juarez for a moment, turned around, and exited the church. After Defendant left the church, Mr. Juarez went to secure his family and other members of the congregation who were hiding in an outside shed. Back inside the church, Mr. Juarez observed Mr. Wilson was still alive but injured. Mr. Juarez recounted speaking with Mr. Wilson, asking if he was okay and lifting Mr. Wilson's shirt to observe the gunshot wound. Law enforcement arrived shortly after these events.

Ms. Dominguez similarly recounted that when she arrived at Vino Nuevo Ministry Church at around 7:00 p.m., she witnessed Defendant's and Mr. Wilson's argument. Despite the argument, Ms. Dominguez parked her car and began walking into the church. As she approached the church, Ms. Dominguez heard gunshots and witnessed Mr. Wilson run towards the church, away from Defendant. Ms. Dominguez recalled Mr. Juarez had opened the church's door for Mr. Wilson, and attempted to lock the door, but Defendant had forced his way inside. Ms. Dominguez testified she ran to her vehicle and ducked down upon hearing multiple gunshots fired by

Defendant outside in the parking lot and inside the church. She witnessed Defendant walk out of the church and drive off in a dark colored, two-door vehicle.

Adrienne Moore, another witness, drove past the scene and heard the argument between Defendant and Mr. Wilson. Ms. Moore recounted that Defendant had retrieved a gun from a car and opened fire on Mr. Wilson, as he fled to the church for safety. She described the car as a dark colored, two-door sedan. Ms. Moore also testified she saw Defendant shoot continuously as he pursued Mr. Wilson. Ms. Moore kept driving and called 911.

Law enforcement officers from the Wilmington Police Department responded to the incident and began investigating—collecting surveillance footage and eyewitness testimony identifying Defendant as the shooter. Officer Kasey McGrath arrived at the scene just after 7:00 p.m. Officer McGrath first sought to secure Mr. Wilson who had suffered a gunshot wound to the left side of his chest. Officer McGrath recounted Mr. Wilson was still alive, and the bullet seemed to have gone "though and out pretty quick." Officer McGrath was able to speak with Mr. Wilson. Officer Andrew Pagan recounted that when he arrived on the scene Mr. Wilson "was up and walking around, talking." According to Officer Pagan, he then assisted Mr. Wilson to a nearby ambulance and escorted him to the hospital. During the ambulance ride, Officer Pagan attempted to identify the shooter. But Mr. Wilson denied knowing the shooter's identity.

Nonetheless, police identified Defendant through surveillance videos, eyewitness identifications, vehicle records, and prior police interactions. Detective Lucas Borton with the Wilmington Police Department collected video and photographic evidence from City Tobacco & Vape and Chic Lady. From the evidence he collected, Detective Borton identified Defendant as the individual who shot Mr. Wilson and fled the scene in a black Honda Civic.

On 2 December 2021, a judicial official issued a search warrant of Defendant's car and apartment. Detective Plant recounted that upon arriving to the apartment, the first thing she noticed was a black, two-door Honda Civic with a temporary license plate. Detective Plant took photographs of the vehicle for evidence and performed a "gunshot residue evidence collection kit." The detectives next executed a search of Defendant's apartment. Defendant was not at the residence when the search warrant was executed. The search of the Defendant's residence yielded a pair of shoes relevant to the investigation and a traffic citation issued to Defendant, also identifying the black Honda Civic. Defendant's vehicle was fully searched at the Wilmington Police Department, where it was found to contain mail addressed to Defendant and various items of clothing.

On 13 December 2021, Defendant was served with an arrest warrant and charged with attempted first-degree murder, discharging a firearm into occupied property, assault with a deadly weapon with intent to kill inflicting serious injury, and possession of a firearm by a felon. Defendant's trial commenced on 5 September

2023. At the close of the State's evidence and close of all evidence, Defendant moved to dismiss his charges, challenging the sufficiency of the evidence of identification and the statutory elements of discharging a firearm into occupied property. The trial court denied both motions. On 8 September 2023, the jury returned a guilty verdict for the felonies of attempted first degree murder, discharging a firearm into occupied property, and possession of a firearm by a felon. The jury also returned a guilty verdict for misdemeanor assault with a deadly weapon, a lesser included offense of assault with a deadly weapon with intent to kill inflicting serious injury.

The trial court sentenced Defendant to 238–298 months imprisonment for attempted first degree murder and imposed a consecutive sentence of 19–32 months for possession of a firearm by a felon. The trial court also consolidated Defendant's convictions for discharging a firearm into occupied property and assault with a deadly weapon. Defendant timely entered his notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b) ("appeal lies of right directly of the Court of Appeals" from "any final judgment of a superior court. . . .") and 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

## III. Analysis

### A. Motion to Dismiss – Identity of Defendant

We first consider Defendant's challenge regarding his motion to dismiss for insufficient identification evidence. We review the "denial of a motion to dismiss *de novo* and view[ ] the evidence in the light most favorable to the State, giving the State every reasonable inference therefrom, and resolving any contradictions or discrepancies in the State's favor." *State v. Miles*, 222 N.C. App. 593, 599, 730 S.E.2d 816, 822 (2012) (citations omitted). "All of the evidence actually admitted, whether competent or incompetent, which is favorable to the State must be considered by the trial court in ruling on the motion." *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983).

Our review is limited to "whether there is substantial evidence of (1) each essential element of the offense charged and of (2) the defendant's identity as the perpetrator of the offense." *Miles*, 222 N.C. at 599, 730 S.E.2d at 822 (citations omitted) (citing *State v. Lowry*, 198 N.C. App. 457, 465, 679 S.E.2d 865, 870 (2009)). "Substantial evidence is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Dew*, 379 N.C. 64, 69, 864 S.E.2d 268, 273 (2021). Substantial evidence can take the form of either direct or circumstantial evidence or some combination of both. *Miles*, 222 N.C. App. at 599, 730 S.E.2d at 822 (citing *State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991)) ("Whether the evidence presented is direct or circumstantial, the test for sufficiency of the evidence is the same."). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every

hypothesis of innocence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000) (quoting *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988)).

Viewing this case under such a deferential standard, substantial evidence existed from which the jury could infer that Defendant was the shooter. *See Miles*, 222 N.C. App. at 599, 730 S.E.2d at 822. "If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455. At trial, circumstantial evidence took the form of witness testimony—which was bolstered by surveillance video as well as clothing and vehicle identification. The State presented testimony from multiple eyewitnesses and investigating officers and entered surveillance footage and photographic evidence into the record.

As argued by Defendant, eyewitness accounts varied in certainty regarding the identification of Defendant as the shooter. Upon seeing Defendant's photo in a lineup, Mr. Ganbur identified Defendant with "[s]ixty percent" certainty, noting "I'm thinking it's this guy." Ms. Dominguez was initially unable to identify Defendant when reviewing a photo lineup. Ms. Moore observed the shooting from her vehicle and described the shooter's race and sex but could not positively identify Defendant. Nonetheless, the State sufficiently connected Defendant to the crimes through additional means—including surveillance video, clothing, and vehicle identification.

This evidence, in the light most favorable to the State, successfully surmounts the motion to dismiss hurdle. *See Miles*, 222 N.C. App. at 599, 730 S.E.2d at 822.

Notwithstanding Defendant's challenges regarding uncertainties in eyewitness identification, the State presented ample other evidence of identification. *See Miles*, 222 N.C. App. at 599–600, 730 S.E.2d at 822 (2012) ("[I]t is for the jury to resolve any contradictions or discrepancies in the evidence . . . ."); *see also State v. Mims*, 241 N.C. App. 611, 618, 774 S.E.2d 349, 355 (2015) (quoting *State v. Pridgen*, 313 N.C. 80, 86, 326 S.E.2d 618, 623 (1985)) ("[I]t is well-established that 'a witness's equivocation on the question of identity does not render the testimony incompetent, but goes only to its weight.'"). Since there is a reasonable inference of Defendant's identification as the perpetrator of each crime, substantial evidence supports the trial court's denial of Defendant's motion to dismiss. *See Stone*, 323 N.C. at 452, 373 S.E.2d at 433 ("Circumstantial evidence is sufficient if it provides a basis for a reasonable inference of guilt.").

## B. Discharging a Firearm into Occupied Property

We next examine whether substantial evidence supports Defendant's charge for discharging a firearm into occupied property. Defendant challenges the trial court's denial of his motion to dismiss based on the sufficiency of the evidence of his location when firing into the church. In his brief, "Defendant contends that being half inside the church building with the gun and then firing, is the same, under the statute, as being totally inside the church." That is, Defendant maintains that because he was partially inside the church, he could not have shot "into" the church in violation of N.C. Gen. Stat. § 14-34.1 (2023).

We again apply the de novo lens, viewing the evidence in the light most favorable to the State. *State v. Alexander*, 152 N.C. App. 701, 705, 568 S.E.2d 317, 319 (2002) (applying the substantial evidence standard to defendant's motion to dismiss discharging a firearm into occupied property charge); *see also State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652–53 (1982) (citation omitted) ("In ruling on a motion to dismiss the trial court is to consider the evidence in the light most favorable to the State.").

Under N.C. Gen. Stat. § 14-34.1, a person who "willfully or wantonly discharges or attempts to discharge . . . [a] firearm into any building . . . while it is occupied is guilty of a Class E felony." *State v. Everette*, 361 N.C. 646, 650, 652 S.E.2d 241, 244 (2007) (quoting N.C. Gen. Stat. § 14-34.1). "To support a conviction under this statute, the defendant must have had reasonable grounds to believe that the building might be occupied by one or more persons." *Id.* (cleaned up).

In a similar case, this Court sustained the trial court's denial of the defendant's motion to dismiss and conviction despite the defendant shooting a victim while part of his body was partially inside a vehicle. *See State v. Mitchell*, 240 N.C. App. 246, 258, 770 S.E.2d 740, 748 (2015) (upholding the denial of the defendant's motion to dismiss his charge under N.C. Gen. Stat. § 14-34.1 when the defendant fired three gunshots and on the final shot, his "right leg [was] located outside of the vehicle, and his right foot was on the ground . . . . Part of Defendant's left leg, slightly below the knee, was in the vehicle." Testimony also showed the defendant's "hips, chest, and

head were all outside of the vehicle, [but] [his] right arm, up to approximately the middle of his forearm, was extended into the vehicle").

The record shows that Defendant was partially outside the church when he shot Mr. Wilson and Defendant had reasonable grounds to believe the building was occupied by one or more persons upon doing so. Mr. Juarez, who was inside the church at the time of the shooting, testified that Defendant broke through the door of the church, and "part of his body" was inside the church when he shot Mr. Wilson. The State presented substantial evidence of each essential element of the criminal offense. *See Mitchell*, 240 N.C. App. at 257–58, 770 S.E.2d at 748; *see also Dew*, 379 N.C. at 69, 864 S.E.2d at 273. Accordingly, the trial court properly denied Defendant's motion to dismiss.

### C. Mutually Exclusive Verdicts

Finally, we address Defendant's contention regarding mutually exclusive verdicts. Conceding a failure to object at trial, Defendant maintains the trial court "committed plain error in failing to instruct the jury that it could only convict Defendant of attempted murder or the lesser crime of assault with a deadly weapon, but not both." To establish plain error, a defendant must carry their burden of demonstrating a fundamental error occurred at trial, which had a probable impact on the jury's determination of guilt. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

*Opinion of the Court*

Defendant relies on *State v. Yang*, 174 N.C. App. 755, 622 S.E.2d 632 (2005) and *State v. Hames*, 170 N.C. App. 312, 612 S.E.2d 408 (2005). But these cases precede our Supreme Court's decision in *State v. Mumford*, 364 N.C. 394, 699 S.E.2d 911 (2010), which clarified that mutually exclusive verdicts occur only when guilt of one offense necessarily excludes guilt of another. *Id.* at 400, 699 S.E.2d at 915. In other words, "a distinction is drawn between verdicts that are merely inconsistent and those which are legally inconsistent *and* contradictory." *Id.* This is so "because each count of an indictment is, in fact and theory, a separate indictment, the inconsistencies were permissible, and not found to be legally contradictory, as long as there was sufficient evidence to support the guilty verdict." *Id.* at 400, 699 S.E.2d at 915 (cleaned up).

Attempted first degree murder requires: "(1) a specific intent to kill another person unlawfully; (2) an overt act calculated to carry out that intent, going beyond mere preparation; (3) the existence of malice, premeditation, and deliberation accompanying the act; and (4) failure to complete the intended killing." *State v. Peoples*, 141 N.C. App. 115, 117, 539 S.E.2d 25, 28 (2000). Misdemeanor assault with a deadly weapon is lesser included offense to assault with a deadly with weapon with intent to kill inflicting serious injury. *See State v. Owens*, 65 N.C. App. 107, 110, 308 S.E.2d 494, 497 (1983). The elements of assault with a deadly weapon with intent to kill inflicting serious injury are: "(1) assault; (2) with a deadly weapon; (3) with intent to kill; and (4) serious injury not resulting in death." *State v. James*, 321 N.C. 676,

687, 365 S.E.2d 579, 586 (1988); *see also* N.C. Gen. Stat. § 14-32 (2023). In distinguishing the felony and misdemeanor variant, "[t]he only difference in what the State must provide for the offense of misdemeanor assault with a deadly weapon and felony assault with a deadly weapon with intent to kill is the element of intent to kill." *State v. Riley*, 159 N.C. App. 546, 553–54, 583 S.E.2d 379, 385 (2003) (citations omitted).

Applying *Mumford*, we conclude Defendant's verdicts for attempted first degree murder and misdemeanor assault with a deadly weapon are not mutually exclusive. "[A]s long as there was sufficient evidence to support the guilty verdict," inconsistent verdicts are "permissible, and not found to be legally contradictory." *Mumford*, 364 N.C. at 400, 699 S.E.2d at 915. "It is firmly established that when there is sufficient evidence to support a verdict, mere inconsistency will not invalidate the verdict." *Id.* at 398, 699 S.E.2d at 914 (cleaned up). Here, sufficient evidence supports the jury's verdict as to each charge and the trial court therefore did not err.

## IV. Conclusion

For the above reasons, having thoroughly reviewed Defendant's arguments and the record, we hold no error in the trial court's rulings.

NO ERROR.

Judges ARROWOOD and CARPENTER concur.

Report per Rule 30(e).